IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MINH VU HOANG

THANH HOANG

*PLAINTIFFS*

VS.

DKC 16 CV 1592

GARY A. ROSEN; ROGER SCHLOSSBERG;

MARION A. HECHT; UHY ADVISORS FLVS, INC.,

THE DISTRICT OF COLUMBIA PRACTICE

GROUP OF GOODMAN & COMPANY LLP;

GOODMAN & COMPANY; GOODMAN

&COMPANY, LLP; DIXON HUGHES,

PLLC; DIXON HUGHES GOODMAN

SOLUTIONS LLC; CLIFTON GUNDERSON

 LLP; LARSON ALLEN LLP;

CLIFTONLARSONALLEN LLP;

GOODMAN SOLUTIONS LLC; GOODMAN

SOLUTIONS-FORENSIC,

LITIGATION & VALUATION; AND CBIZ, LLC

*DEFENDANTS*

**COMPLAINT FOR RELIEF AND JURY DEMAND FOR RICO**

COMES NOW, Minh Vu Hoang and Thanh Hoang, *pro se* (hereinafter referred to as "Plaintiffs"), and bring this action for relief under the Racketeer Influenced and Corrupt Organization Act (RICO) (18 U.S.C. §§ 1961-1968), Conspiracy to Commit Fraud and Fraud, and respectfully shows the Court as follows:

## I. Jurisdiction and Venue

1.    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 18 U.S.C. §1964. Further, this Court has the original and exclusive jurisdiction of all cases under Title 11.

2.    This Court has supplemental jurisdiction under 28 U.S.C. §1367 over the claims asserted here that arise under the laws of the State of Maryland.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that the Plaintiffs and all Defendants reside in the district and this is the district in which a substantial part of the events or omissions giving rise to the claims occurred.

## II.    PARTIES

4. Plaintiffs Minh Vu Hoang and Thanh Hoang are residents of 1530 Ainsley Road Silver Spring MD 20904.

5. Defendant Gary A. Rosen is an attorney, and the sole member of Gary A. Rosen Chartered, with an office at One Church Street #802, Rockville MD 20850. Since

August 31, 2005 he was appointed Trustee and counsel for the Trustee in the bankruptcy case of Minh Vu Hoang, Thanh Hoang No. 05-21078-TJC and the Hoang's three related cases.

6. Defendant Roger Schlossberg is an attorney and a principal of Schlossberg and Associates, with an office located at 18241 Henson Blvd. Suite 201, Hagerstown, Maryland 21741-4227. He is appointed co-counsel for Trustee Rosen since August 31, 2005.

7. Defendant Marion Hecht Clay, now known as Marion A. Hecht, is a forensic accountant. From 2005-2009, she was a principal of Defendant UHY Advisors, FLVS (UHY). The Bankruptcy Court granted an Order on February 6, 2006 allowing Rosen to employ Hecht and UHY as the forensic accounting firm for the Hoang's estate. [See Exhibit 1, Order Granting Application for Authority to Employ Forensic Accountant] In about March 2009, UHY and affiliates were acquired by Goodman & Company LLP, and Hecht became a Managing Director of that entity. In about March 2011, Goodman & Company LLP and Dixon Hughes PLLC merged, forming Dixon Hughes Goodman LLP (Dixon Hughes). Effective April 1, 2011, Hecht was employed by Dixon Hughes Solutions, LLC, a wholly-owned subsidiary of Dixon Hughes. Soon thereafter, in about May 2011, Hecht left the merged entity and began work for Clifton Gunderson LLP, which

has since merged with LarsonAllen LLP to form CliftonLarsen Allen LLP.  This

entity has offices at 4250 N. Fairfax Drive, Suite 1020, Arlington, VA 22203 and

Hecht is currently a Principal.  *See Exhibit 2*; Exhibit *3*.

## III.   CORPORATE ENTITY DEFENDANTS

8.      The following are entities for which Hecht worked and have received

excessive fees for the period March 1, 2009 through at least 2012.

9.   Defendant District of Columbia Practice Group of UHY was a group of UHY,

of which Hecht was a member. It was acquired by Goodman & Company LLP in

March 2009.

Goodman Entities

10. Goodman Solutions- Forensic, Litigation & Valuation, LLC was a forensic

accounting company which was a wholly owned subsidiary of Goodman &

Company, LLP. It was created on January 1, 2011 as it became a wholly owned

subsidiary of Goodman Solutions, LLC. *Exhibit 3.*

11. Goodman Solutions, LLC is a wholly owned subsidiary of Goodman &

Company, LLP.

12.  Goodman Advisors FLVS, Inc. was a wholly owned subsidiary of Goodman &

Company LLP. It is the forensic accounting entity which, together with Goodman

& Company LLP, on August 3, 2009 applied for $344,528.75 in fees and costs. Its principal place of business is unknown to Plaintiffs. *Exhibit 4.*

13. Clifton Gunderson, LLP is a forensic accounting firm that employed Hecht on May 2, 2011. It performs forensic work for the Hoang estate without authorization until its *nunc pro tunc* application submitted about or on June 2, 2011. *Exhibit 3.*

14. Larson Allen, LLP is an unknown entity which was combined with Clifton Gunderson, LLP on January 2, 2012.

15. Clifton Gunderson, LLP merged with Larson Allen, LLP on January 2, 2012 to form CliftonLarsonAllen LLP. Since about May 2011, Hecht has been a managing director with office at 4250 N. Fairfax Drive, Suite 1020, Arlington, VA 22203.

16. UHY was a forensic accounting firm with office at 1425 K Street NW, Suite 500, Washington DC 2005 and currently 8601 Robert Fulton Drive Suite 210, Columbia MD 21046. Defendant UHY's employment was to provide forensic accounting and consulting services to Rosen, pursuant to the Bankruptcy Court's Order dated February 6, 2006. Its services ceased on February 28, 2009 (after its acquisition by Goodman & Company LLP).

17. CBIZ MHM, LLC replaced Dixon Hughes Goodman Solutions LLC as a provider to the estate by Nunc Pro Tunc application as of April 17, 2012. Maurice

Minh-Vu Hoang, Thanh Hoang- Complaint Under RICO

Page 5

Whelan was its managing director with office located at 1875 I Street, NW, 5th

floor, Washington DC 20006.

## IV.   OTHER PERSONS

18. Timothy H. Kelley, CFE, was employed first by UHY and has worked with

Hecht since 2006.  Effective April 17, 2012, he ceased employment with Dixon

Hughes Goodman Solutions and joined CBIZ MHM.

19. Daniel Barden, an administrative assistant, was employed by UHY and Hecht

since 2006. His employment appears to have been terminated some time in 2011.

His current employer and residence is unknown to Plaintiffs.

20. Jocelyn McClure is a real estate agent/broker who has been associated with

three different brokerage businesses in Maryland since 2006. She is currently an

independent contractor with Re/Max Specialists, a real estate company located at

10460 Campus Way S. Upper Marlboro, Maryland 20774.

21. Murray Gould is a real estate agent/broker. He had been an independent

contractor with Remax in Potomac, MD while employed by Rosen between 2006-

2010. He is currently an independent broker of Gould Properties LLC located at

12404 Bobbink Ct. Potomac MD 20854-3005.

22. Alan Grochal is an attorney who has entered his appearance as counsel for

UHY; Jeffrey K. Bernstein; Marion Hecht; and various other entities, including the

Goodman entities and Dixon Hughes entities. His office is located at 100 East Pratt Street, 26th Floor, Baltimore MD 21202.

23. Jeffrey K. Bernstein is a partner in the accounting firm of Goodman & Company, which merged on March 1, 2011 with Dixon Hughes Goodman LLP (Dixon Hughes). Rosen hired Bernstein to prepare federal and state tax returns on August 24, 2009. He is currently listed as a Tax Partner with Dixon Hughes since April 1991 to present. Bernstein's office is located at 111 Rockville Pike, Suite 600 Rockville MD 20850-5120.

24. Maurice J. Whelan is a managing director in the accounting firm of CBIZ, MHM, which provided forensic accounting and litigation support personnel for Gary Rosen. Whelan has served as managing director for Hecht at UHY, and at Dixon Hughes. He is currently listed as Managing Director for CBIZ MHM, LLC located at 3 Bethesda Metro Center, Suite 600 Bethesda MD 20814.

25. Patrick S. Callahan is a CPA and a partner in the accounting firm of Dixon Hughes with offices located at 440 Monticello Avenue, Suite 1400 Norfolk, VA 23510. He further listed as a Tax Consultant independently located at 1630 Crestar Bank Building Norfolk VA 23501. In August 2015, he listed as Maurice J. Whelan, CPA, Consultant located in Silver Spring MD 20906.

# V. **SUMMARY**

26.    Rosen, Schlossberg, and the Hecht (referred to herein as the Trio) acted

together and with others to cause the estate to incur about $15.3 million in costs to

recover about $16.8 million in assets for the estate (see Application for fees).   The

depletion of over 95% of the estate's recoverable assets in fees and costs has left

no assets for the debtor/Plaintiffs as the remaining monies in the estate will be used

to partially satisfy the Plaintiffs' approximate $4.3 million in tax debt.  Plaintiffs

assert, upon information and belief, that this is a case about payment of excessive

fees paid for the provision of duplicative services, the provision of unnecessary

services, payment for services not provided, and lying under oath by the Trustee

Rosen to conceal the exorbitant amount of fees charged to the estate.

27.    The Plaintiffs assert, upon information and belief, that costs were grossly

inflated pursuant to the fraud alleged herein by the Trio, as assisted by others.

Instead of filing monthly billing statement, the Trio caused the filing of false fee

invoices and employment applications by mail and wire; sometimes made to cover

up to a one or two year time period of service in an attempt to overwhelm the

Bankruptcy Court's review, and filed meritless and frivolous lawsuits to deplete the

estate's assets.  For example, Plaintiffs believe, on information and belief, that Kelly

was directed to make false time entries, exaggerate the scope of forensic accountant

duties, and Hecht directed her staff to make false reports on non-estate assets.
Schlossberg used the false reports to file lawsuits (over 70 lawsuits), with Rosen's
approval, many of which were meritless, and allowed Rosen and Schlossberg cover
to falsify their illegal work entries.

28. Plaintiffs allege, on information and belief, that Schlossberg billed for over one
million dollars ($1,000,000) in local travel fees from his office in Hagerstown,
Maryland. Schlossberg charged legal fees for doing work for Rosen, while Rosen
then used Schlossberg's work product and billed the estate again for the work
Schlossberg had allegedly performed.

Others were brought into the schemes to facilitate the activities of the enterprise,
such as Gould and McClure, who were hired to sell properties and recruit contractors
to rehabilitate the estate's properties. Contractors were directed to submit bills in an
excessive amount, and Plaintiffs believe, and will seek to substantiate in discovery,
that these contractors repaid monies to other enterprise members.

## VI.   FACTS

29. Minh Vu Hoang (hereafter referred to as "Minh") filed bankruptcy on May 10,
2005. Thanh Hoang (hereafter referred to as "Thanh") filed bankruptcy on July 12,
2005. The cases are being administered jointly as Case o. 05-21078-TJC, Chapter 7
(Minh and Thanh hereafter referred to as "Plaintiffs").

Minh-Vu Hoang, Thanh Hoang-   Complaint Under RICO

Page 9

30.  Gary A. Rosen (hereinafter referred to as "Rosen") was appointed as Chapter 11, then Chapter 7, Trustee for the main bankruptcy case, Case No. 05-21078-YJC on August 31, 2005. As Trustee, Rosen further placed three other cases related to Thanh and Minh in involuntary bankruptcy after August 2005.

31.  Immediately after he became Trustee, Rosen applied for employment to be named counsel for the estate with Roger Schlossberg (hereinafter referred to as "Schlossberg") as his co-counsel. Both employments were approved by the bankruptcy court on September 22, 2005.

32.  On or about January 16, 2006, Schlossberg wrote a Letter Agreement to offer the forensic accounting job to Marion Hecht Clay and UHY at the corporate address of 1425 K Street, NW, Washington, DC. (*Exhibit. 5*).  The Letter Agreement ("Agreement") was approved by Rosen and accepted by Marion Hecht Clay, who later changed her name to Marion A. Hecht ((hereinafter referred to as "Hecht").

33.  Rosen submitted to the Bankruptcy Court an application to employ UHY, of which Hecht was a principal. On February 6, 2006, the Bankruptcy Court granted an Order "Authorized to employ Marion Hecht Clay, a principal of UHY as forensic accountants upon the terms as set forth in the application and the letter

agreement, i.e., employ Hecht and "those firms by whom you are employed from time to time." Exhibit. 1, above.

34.  In February 2006, the letter agreement was submitted to the Court describing the scope of services to be provided by Rosen, Schlossberg, and UHY.  The agreement was continuously altered to allow the continued hiring of Hecht as companies she worked for were acquirers or merged.

35.  The Bankruptcy Court reported professional fees from January 1, 2005 through September 6, 2012 were paid to Marion Hecht Clay and employees of the corporate entity defendants in the amount of $6,656,818.80, and expenses in the amount of $13,948.70. See *Exhibit 6* attached hereto. Rosen has received $1,768,295.00 in fees and Schlossberg has received $1,707,380.00 in fees and another $137,604.00 as a trustee. As of September 6, 2012 these fees and costs have unlawfully depleted approximately 95% of the estate's recoverable assets, leaving only enough funds to (partially) pay off part of the Plaintiffs tax liability, and leaving the Plaintiffs with no assets.

36.  After Hecht joined Clifton Gunderson LLP in May 2011, Hecht, along with employees who had worked with her, including now employees of Dixon Hughes, Goodman Solutions, LLC, continued to bill for excessive compensation for administering the estate.

# COUNT I

## Conspiracy to Commit Fraud

37. The Allegations contained in paragraphs 1- 36 are incorporated by reference into the body of this Count I as if fully set forth herein.

38. Under Maryland law, the Trio fits the requirement of civil conspiracy in that they are "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal with the further requirements that the act or the means employed must result in damage to the plaintiffs." The law allows these Plaintiffs to bring circumstantial evidence against the Defendants.

39. While Hecht prepared the fees and employment applications, Schlossberg, as co-counsel and Rosen as counsel-trustee revised, audited, approved and submitted said applications to the U.S. Trustee, who for the last ten years has operated under the hands-off supervisory role.

40. It is sufficient if the proven facts and circumstances, pieced together and considered as a whole, show that Hecht, Rosen and Schlossberg understood that their scheme to falsify their bills and invoices to deplete 95% of the estate's funding reserve to pay taxes on behalf of Debtors/Plaintiffs. They knew that scheme would only work if Hecht was employed unconditionally and, therefore,

they continuously hired Hecht even after she left the employ of UHY.  Plaintiffs further allege that the Trio delayed submitting bills by one to two years in order to overwhelm the Bankruptcy Court:

a)  Overwhelm the U.S. Trustee's office, resulting in the U.S. Trustee never reviewing the bills which contained thousands of fraudulent time entries;

b)  Overwhelm the Bankruptcy Court in that the Judge had no time to review hundreds of pages of the invoices;

c)  The one and only creditor had no knowledge of the fraudulent scheme of the Rosen administration (the Internal Revenue Service (hereafter "IRS").

41.   The Trio made it all work. The Court relied on them as officers. The U.S. Trustee without any auditing, took whatever reports the Trio submitted to the Government has been cheated by the Trio as well. The liquidation of Plaintiffs' assets has been used to pay the Trio inflated bills and invoices leaving almost nothing for the Plaintiff to pay the IRS.

## COUNT II

### Common Law Fraud

42.   The Allegations contained in paragraphs 1-41 hereby are incorporated by reference into the body of this Count II as if fully set forth herein.

Minh-Vu Hoang, Thanh Hoang-  Complaint Under RICO

Page 13

43.   Fraud exists only when the speaker has (1) an intent to defraud and (2) knowledge that his statement was false at the time it was made. Pursuant to Fed. R. Civ. P. 9(b), Plaintiffs hereby state "with particularly the circumstances constituting the fraud with regard to the time, place, speakers and contents of the alleged false statements are false and the specific facts raising an inference of fraud."

44.   Plaintiffs' compensable injuries result from the misrepresentation. Their inflated and fraudulent invoices depleted the estate's bank accounts which could have been used to pay Plaintiffs non-dischargeable tax debts.

45.   Plaintiffs assert that the "reliance element" in this fraud claim is clear. The misrepresentations through multi-legal documents filed with the Bankruptcy Court is more than sufficient to show that they substantially induced the Bankruptcy Court to hand out many rubber-stamped Orders.

46.   Defendants knew that the Bankruptcy Court required them to apply for employments and payments for the professionals in a timely manner, before services were performed, not after years of services.   Therefore, instead of filing their invoices and applications every six months, as is customary where lawyers want to submit invoices and get aid expeditiously. Defendants sometimes waited as long as two years before submitting invoices, and were paid in advance.

Fraud On The Court and Lying Under Oath on October 13, 2010

47.   Plaintiffs request this District Court to take judicial notice that on October 13, 2010, the Court held a hearing on the criminal case of *United States v. Thanh and Minh Vu Hoang*, Criminal Case No. DKC-8-070CR-001 72-00. The Government put Gary Rosen, as Trustee of the Hoang's Chapter 7 bankruptcy case on the witness stand. When Minh-Vu Hoang's counsel, Paula Junghans, asked Mr. Rosen what were the current-to-date expenses of the estate, his answer was about four million. Per U.S. Bankruptcy Court Professional Fees Applied For/Awarded, between May 20, 2005 to October 13, 2010, Mr. Rosen spent not "about four million" as he testified under oath, but exactly $10,005,047.  Plaintiffs contend that Mr. Rosen, as Trustee, lied under oath so that the Court and the creditors would not have an accurate economic picture of the estate.

48.    In sum, Plaintiffs submit evidence showing Defendants have made false testimony for the purpose of defrauding Debtors/Plaintiffs, while they all have actual and constructive knowledge of their actions ad misconducts.

## COUNT III

### (RICO Under 18 U.S.C. § 1962(c))

49.   Plaintiffs reallege and incorporate Paragraphs 1 through 48 of this Complaint.

50.   Defendants listed below are all "persons" capable of holding a legal or

beneficial interest in property with the meaning of 18 U.S.C. § 1961(3).  Defendants

listed above have violated 18 U.S.C. § 1962(c) by committing multiple acts

described below.

### Enterprise

51.  Plaintiffs allege that during all time material herein that defendants Rosen,

Schlossberg, Hecht, along with other individuals and entities described herein,

constituted the ***"Rosen & Company Continuing Criminal Enterprise"***

(hereinafter, the Enterprise).

52.   Plaintiffs allege that the Enterprise constitutes a RICO 'enterprise' as that term

is defined pursuant to 18 U.S.C. § 1961(4).  As described above, the members of the

Enterprise have functioned together as a continuing unit with a common purpose to

defraud the Plaintiffs of their equity in the bankruptcy estate.

53.  The Enterprise exists separate and apart and distinct from the conducting of the

pattern of racketeering as it had the structural features required by the Supreme

Court in *Boyle v. United States*, *i.e.*, a purpose, relationships among those associated

with the enterprise and longevity sufficient to permit these associates to pursue the

enterprise's purpose, which was to promote a fraudulent bankruptcy liquidation plan

to generate exorbitant fees and commissions.  Each defendant is distinct and separate

from the association-in-fact enterprise of which they are a component part. The Enterprise has been engaged in, and its activities affect, interstate commerce.

### The Racketeering Violation

54.   From in or about 2006, and continuing up through at least year 2016, Rosen, Schlossberg, and Hecht, the aforementioned individual defendants, and corporate entity defendants who employed Hecht, each of whom are persons associated with, or employed by the Enterprise, did knowingly and unlawfully conduct or participate, directly or indirectly, in the affairs of the Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and § 1961(5), all in violation of 18 U.S.C. § 1962(c).

55.   Plaintiffs allege that RICO defendants engaged in the alleged criminal activities with the intent to defraud Plaintiffs' of its business and property. The RICO Defendants also worked with others to defraud Plaintiffs of money or property by concealing material facts from Plaintiffs and from the bankruptcy court resulting in loss of Plaintiffs' property and monies.

56.   Plaintiffs allege that these activities constitute conduct committed by and through commission of bankruptcy fraud, mail fraud, and wire fraud, acts indictable as 'racketeering activity," as that term is defined in 18 U.S.C. §§ 1961(1)(B) and 1961(1)(D).

*[18 U.S.C. §1961(5) Pattern of Racketeering Activity]*

57.     Plaintiffs allege that the course of conduct engaged in by said RICO defendants constitutes both continuity and relatedness of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. § 1961(5).  Plaintiffs can show the relatedness prong because the predicate acts have the "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise."  All predicate acts had the same purpose of generating exorbitant fees for the participants of the Enterprise thereby wiping out the equity of the Plaintiff debtors.  Rosen lied under oath as to the expenditures of the estate in order to hide the exorbitant amount of fees generated from the estate's corpus.

58.     Plaintiffs allege that the continuity of the pattern of racketeering activity is both closed-ended inasmuch as a series of related predicate offenses extended over at least <u>seven</u> years (a substantial period of time).  The predicate offenses were also open-ended inasmuch as the defendants operated as part of a long-term association that existed for criminal purposes.  Moreover, the racketeering activities themselves included a specific threat of repetition extending indefinitely into the future.

## Conducting Affairs of the Enterprise

59.  The members of the enterprise, Rosen, Schlossberg, and Hecht participated in the "operation or management" of the enterprise.  They directed other individuals who were associated with the enterprise, such as Gould, McClure, Barden, Kelly.  For example, Rosen used Gould, who had a real estate agency, to sell estate properties for which he received a large commission, part of which Plaintiffs believe may have been repaid to Rosen.  Rosen recruited McClure, a real estate agent, to sell properties, generating $488,304 in fees since 2008, part of which again is believed to have been given back to Rosen and Schlossberg in "free services."  These free services involved hiring contractors to rehabilitate estate properties, who submitted vastly inflated bills, and part of these fees were believed to have been siphoned back to Rosen and/or McClure.   Moreover, Hecht hired Barden and Kelly, neither of whom had any forensic accounting experience or college education, who billed at high rates, changed payroll and time entries that were submitted to the Bankruptcy court,  and acted as shells to siphon millions of dollars to Hecht.  Hecht is believed to have provided monies to Rosen and Schlossberg and further discovery will be needed to substantiate.  Hecht in particular operated and managed the enterprise by exerting control over its activities, causing Rosen to compensate her with an exorbitant amount of fees (over $6.6 million) from the trust estate.

Minh-Vu Hoang, Thanh Hoang-  Complaint Under RICO

Page 19

1

## Racketeering Acts

2

3   60.    Within the District of Maryland, and elsewhere, the Defendants committed the

4   following racketeering acts:

5

6   ## Racketeering Act One (Rosen)

7   61.    On or about October 13, 2010, Rosen committed the following act of

8   bankruptcy fraud in violation of 18 U.S.C. § 152(2), i.e., Rosen falsely testified in

9

10  the District Court that he had spent about $4 million dollars in expenses for the estate

11  contrary to the $10,005,047 million on record.  Rosen falsely stated this amount to

12
    that it would not appear the expenditures exceeded the actual tax loss of $4.25
13 .

14  million, per the Plaintiffs plea, so that Rosen could divert public and judicial

15  attention away from the siphoning of the estate's assets, all in violation of § 152(2).

16

17  ## Racketeering Acts Two through Six

18  ## (Rosen; Schlossberg; Hecht)

19

20  62.    From on or about January 17, 2006 through June 28, 2011, Rosen,

21  Schlossberg, as aided and abetted by Hecht, committed the following acts of wire

22

23  fraud and bankruptcy fraud by the payment of grossly excessive fees to Hecht

24  pursuant to inflated invoices:

25

26

27

28  Minh-Vu Hoang, Thanh Hoang- Complaint Under RICO

    Page 20

RA Two

63.     Rosen, Schlossberg, as aided and abetted by Hecht, committed the following acts of wire fraud and bankruptcy fraud, any one of which constitutes RA 2:

(a) On March 27, 2007, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently embezzled assets of the estate of the debtor by making a payment to Hecht in the amount of $1,237,491, pursuant to a greatly inflated invoice, in violation of 18 U.S.C. § 153.

(b) On March 27, 2007, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently obtained monies of the estate of the debtor by making a payment to Hecht in the amount of $1,237,491, which amount was paid pursuant to a greatly inflated invoice submitted to the Bankruptcy Court by ECF, in violation of 18 U.S.C. section 1343.

RA Three

64.     Rosen, Schlossberg, as aided and abetted by Hecht, committed the following acts of wire fraud and bankruptcy fraud, any one of which constitutes RA 3:

(a) On June 11, 2008,  Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently embezzled assets of the estate of the debtor by making a payment to Hecht in the amount of $2,422,648, which represented an amount on a greatly inflated invoice, in violation of 18 U.S.C. section 153.

(b) On June 11, 2008, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently obtained monies of the estate of the debtor by making a payment to Hecht in the amount of $2,422,648, which amount was paid pursuant to a greatly inflated invoice submitted to the Bankruptcy Court by ECF, in violation of 18 U.S.C. section 1343.

## RA Four

65.   Rosen, Schlossberg, as aided and abetted by Hecht, committed the following acts of wire fraud and bankruptcy fraud, any one of which constitutes RA 4:

(a) In about 2008, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently embezzled assets of the estate of the debtor by making a payment to Hecht in the amount of $837,789, which represented an amount on a greatly inflated invoice, in violation of 18 U.S.C. section 153.

(b) In about 2008, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently obtained monies of the estate of the debtor by making a payment to Hecht in the amount of $837,789, which amount was paid pursuant to a greatly inflated invoice submitted to the Bankruptcy Court by ECF, in violation of 18 U.S.C. section 1343.

RA Five

66.     Rosen, Schlossberg, as aided and abetted by Hecht, committed the following acts of wire fraud and bankruptcy fraud, any one of which constitutes RA 5:

(a) In fiscal year 2009, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently embezzled assets of the estate of the debtor by making a payment to Hecht in the amount of $1,324,899, which represented a payment pursuant to a greatly inflated invoice, in violation of 18 U.S.C. section 153.

(b) In fiscal year 2009, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently obtained monies of the estate of the debtor by making a payment to Hecht in the amount of $1,324,899, which amount was paid pursuant to a greatly inflated invoice submitted to the Bankruptcy Court by ECF, in violation of 18 U.S.C. section 1343.

RA Six

67.     Rosen, Schlossberg, as aided and abetted by Hecht, committed the following acts of wire fraud and bankruptcy fraud, any one of which constitutes RA 6:

(a) In fiscal year 2010, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently embezzled assets of the estate of the debtor by making a payment to Hecht in the amount of $457,661, which represented a payment pursuant to a greatly inflated invoice, in violation of 18 U.S.C. section 153.

(b) In fiscal year 2010, Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently obtained monies of the estate of the debtor by making a payment to Hecht in the amount of $457,661, which amount was paid pursuant to a greatly inflated invoice submitted by ECF, in violation of 18 U.S.C. section 1343.

### Racketeering Act Seven

### (Rosen; Schlossberg; Hecht)

68.    On or about February 18, 2010, Rosen, Schlossberg, as aided and abetted by Hecht committed the following acts of wire fraud and bankruptcy fraud, any one of which alone, constitutes RA 7:

(a) Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently embezzled assets of the estate of the debtor by making a payment to Hecht in the amount of $135,330 (which represented an inflated payment for the provision of tax services by Bernstein) when no services were provided by Hecht, in violation of 18 U.S.C. section 153.

(b) Rosen, Schlossberg, as aided and abetted by Hecht, fraudulently obtained monies of the estate of the debtor by making a payment to Hecht in the amount of $135,330 which represented a payment when no services were provided by Hecht, and the amount had been submitted to the Bankruptcy Court by ECF, in violation of 18 U.S.C. section 1343.

Minh-Vu Hoang, Thanh Hoang-  Complaint Under RICO

Page 24

## Racketeering Act Eight

69.     From on or about 2006-2012, Hecht, as aided and abetted by Rosen and Schlossberg, directly gave, offered and promised things of value to Rosen and Schlossberg, public officials as described in title 18, section 201(a), to influence such public officials to commit fraud on the United States, i.e, continue making exorbitant and false payments to Hecht, in violation of title 18, section 201(b)(1)(B).

## Racketeering Act Nine

70.     From on or about 2006-2012, Schlossberg submitted invoices to the Bankruptcy Court for payment of travel expenses exceeding $1 million, representing his automobile expenses driving from Hagerstown to Prince George's County, which is a grossly excessive amount and a false oath and account in violation of Title 18, sec. 152(2).

## Racketeering Act Ten

71.     From on or about year 2006 through 2012,  Rosen and Schlossberg embezzled monies from the estate, i.e., Rosen used Schlossberg's work product and then billed the estate again for the work Schlossberg had already performed and been paid by the estate, all in violation of 18 U.S.C. section 153.

## Racketeering Act Eleven

72.    From on or about 2006 through 2012, Rosen, Schlossberg, and Hecht caused the hiring of contractors to rehabilitate the estate's properties.  These Contractors submitted fraudulent bills for dishonest services and then paid back monies to other enterprise members, all in violation of 18 U.S.C. section 153.

## Racketeering Act Twelve

73.    On about August 28, 2012, Rosen falsely stated to the Bankruptcy Court stated that a property located at 4030 Webster Street, Brentwood, MD 20722, was an asset of the estate in violation of Title 18, U.S.C. 152(3).   This enabled him to use estate monies to pay commissions to McClure, the purported real estate agent who had an exclusive deal arrangement and approve funds to contractors at two to four times the market costs pursuant to non-bid contracts.  It is believed that a portion of these monies are repaid to Rosen and further discovery will be needed to substantiate this allegation.

## RICO RELIEF

74.    Plaintiffs pray for entry of judgment against defendants, and each and every one of these defendants, jointly and severally, as follows:

1.  For entry of judgment of compensatory damages, according to offer of proof at time of trial, arising from violating section 1962(c), trebled pursuant to RICO section 1964(c);

2.  For entry of judgment and award of reasonable attorneys' fees, costs, and expenses arising from violating section 1962(c), pursuant to RICO section 1964(c);

3.  For such further and other relief as this Honorable Court deems just, equitable, and proper in the premises.

### COUNT FOUR

### *[RICO § 1962(d) Conspiracy]*

[Against Rosen, Schlossberg, and Hecht]

75.  Plaintiffs reallege and incorporate Paragraphs 1 through 73.

76.  Plaintiffs allege that commencing in 2006, and during and continuing at all times through at least year 2012, RICO defendants conspired to violate section 1962(c), i.e., each defendant agreed that a conspirator would conduct or participate in the affairs of the Enterprise through a pattern of racketeering, including acts indictable under 18 U.S.C. §§ 201; 1341, 1343, 1951; and acts involving fraud in violation of Title 11, as more fully described in Count Three. Plaintiffs allege that the conspiratorial objective of that mutual agreement was intended to obtain

case by considering the entire circumstances of a situation with an eye to fairness

and the prevention of inappropriate conduct of these Defendants.

### VII.   CONCLUSION

The defendants have committed the offenses described above, by having

eliminated the Plaintiffs' interest in their estate by the payment of excessive fees,

many for duplicative and non-existent services, and have been untruthful to the

Bankruptcy Court to conceal the payment of excessive fees.

Accordingly, the Plaintiffs respectively request this Court to award the Relief

described above.

DATED:     May 23, 2016

BY _____
Minh-Vu Hoang (pro se)

BY _____
Thanh Hoang (pro se)
1530 Ainsley Road Silver Spring MD
20904.
(301)219-7052
Mvhoang2013@gmail.com
Plaintiffs

Minh-Vu Hoang, Thanh Hoang-   Complaint Under RICO

Page 29

## CERTIFICATE OF SERVICE

I certify on the date indicated below, I caused a copy of the foregoing document to be filed with the Clerk of the Court by personal delivery of this Complaint. I will arrange for service for Summons or Request To Waive Services of a Summons of this Complaint to the defendants named herein.

I affirm under penalty of perjury under the laws of the State of Maryland and the United States that the foregoing is true and correct to the best of my knowledge.

SIGNED May 23, 2016 in Silver Spring, Maryland.



Minh-Vu Hoang

Minh-Vu Hoang, Thanh Hoang- Complaint Under RICO

Page 30